IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

January 20, 2005 Session

## STEPHANIE TODD WATSON v. TIMOTHY JAMES WATSON

**An Appeal from the Chancery Court for Henderson County**
**14991     James F. Butler, Chancellor**

**No. W2004-00633-COA-R3-CV - Filed August 24, 2005**

This case is about parental relocation and child custody. The parents of a minor child divorced in 2001. Both parents lived in Lexington, Tennessee, and, at the time of the divorce, agreed to joint custody. The child alternated daily between the parents' homes. In 2002, the mother remarried and moved to Murfreesboro, Tennessee. The mother petitioned the court to designate her as primary residential parent and allow her to move the child with her to Murfreesboro. The father opposed the petition and asked the court to designate him as the primary residential parent. The trial court found that it was in the child's best interest to move to Murfreesboro with the mother, and designated her as primary residential parent. The father appealed. We affirm, finding that the evidence does not preponderate against the trial court's decision to designate mother as primary residential parent and permit the child to move with her.

**Tenn. R. App. P. 3 Appeal as of Right; the Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Harold F. Johnson, Jackson, for defendant/appellant Timothy James Watson

Betty Stafford Scott, Jackson, and Mary Jo Middlebrooks, Jackson, for plaintiff/appellee Stephanie Todd Watson

## OPINION

Plaintiff/Appellee Stephanie Todd Watson ("Mother") and Defendant/Appellant Timothy James Watson ("Father") had a son, Christian, born July 7, 1997. They were married on June 18, 1998, and lived in Lexington, Tennessee.

On August 30, 2001, Mother and Father were granted a divorce on the grounds of irreconcilable differences. At the time of the divorce, Mother and Father agreed to a permanent parenting plan ("Plan"). The Plan, incorporated into the marital dissolution agreement, granted

Mother and Father joint custody of Christian, and stated that Mother and Father would alternate physical custody of Christian on a daily basis, that neither party would pay child support to the other, and that major decisions regarding the child would be made jointly. Disagreements about joint decisions or modifications of the Plan were to be handled through mediation.

In June 2002, Mother remarried. Thereafter, in April 2003, Mother filed a petition in the Henderson County Chancery Court, indicating that she planned to relocate to Murfreesboro, Tennessee, and wanted Christian to move with her. Father did not agree to permit Christian to move. Mother and Father attempted to resolve their issues through mediation, as required by the Plan, but were unsuccessful in resolving the issues of a change in custody and the parenting schedule for the non-custodial parent. The petition asked the trial court to enter an order on an interim parenting plan.

The revised parenting plan submitted by Mother provided that the child would reside with Mother during the week and with Father on every weekend while the child was playing T-ball[1] and every other weekend after T-ball season ended. Mother's proposed revised parenting plan designated Mother as the primary residential parent and granted Mother the sole authority to make major decisions regarding the child.

In June 2003, Mother petitioned the court to adopt her proposed Revised Plan as the permanent parenting plan and appoint her as the primary residential parent. The petition stated that Mother was relocating to Murfreesboro in order to take a significantly better employment position, and, as a result of the move, the parties' original parenting schedule of rotating physical custody every other day would no longer be feasible. Mother and Father agreed to an interim parenting schedule until a hearing could be held on the matter.

Also in June 2003, Father proposed to the trial court his own revised parenting plan, which designated him as the primary residential parent. Father's proposed plan provided that the child would reside with him during the school year with Mother having residential parenting time on alternative weekends, excluding T-ball season. Father's petition asked the trial court to require that Mother pay Father child support based on her income and requested that major decisions regarding the child be made jointly. Like Mother's petition, Father's proposed petition noted that the original parenting plan would no longer be feasible due to Mother's relocation to Murfreesboro. A hearing on the matter was held on July 3, 2003 in the Chancery Court for Henderson County.

At the hearing, Mother testified that she had searched for a job in the Lexington, Tennessee area for about a year before accepting the job in Murfreesboro. Mother said that she accepted the Murfreesboro job because it was in her field, the salary was higher, and it had a flexible schedule, which would allow her take care of Christian when the need arose. Mother testified that she chose the specific neighborhood in Murfreesboro based on her internet search for good schools in the area. The report from the internet was entered into evidence at the hearing, over Father's objection.

---

[1]Father apparently coached Christian's T-ball team.

Mother acknowledged that her current husband, John "J. P." Patterson, was from middle Tennessee, had extended family in middle Tennessee, including a child, and was living and working in middle Tennessee when they met. She maintained that these facts had no bearing on her choice to accept a job in Murfreesboro and move there. Mother also conceded that, in Lexington, Father lived in the home in which the parties lived when Christian was born, attended the church in which Christian was baptized, and that both Mother and Father had extended family in the Lexington area. Mother noted that one of her sisters had moved to Murfreesboro.

Mother testified that, since Christian was born, she had been his primary caregiver, and that she was the parent who took him to doctor's appointments, took off work to be with him during two surgeries, and taught him to swim and ride a bike. She attended Christian's school functions and Christian was close to her parents and grandparents.

During the marriage, Mother testified, Father physically abused her and she was afraid of him. Mother conceded that she did not confide in anyone about the alleged abuse until close to the time of the divorce.

During the hearing, Mother was asked why she had agreed to the original shared parenting plan, which provided for joint custody. Mother explained:

> At the time my concern was protecting me and Christian. I felt like because of [Father's] history as far as the violent behavior toward me– Honestly I was very scared of him. I felt like if I could reach an agreement with him that would not set him off, that that would be in the best interest of all of us to just – for me – to suck it up and do it so that Christian and I could move on.

In her testimony, Mother described an incident that occurred after the divorce. On one occasion, the parties were arguing while Mother was putting Christian in the car. Father kicked the car door, closing it on Mother's legs and injuring her shins. Mother called the sheriff and, as a result, Father was arrested. Mother subsequently dropped the charges, but nevertheless obtained a restraining order against Father.

Mother also testified about Father's care for Christian. Mother said that, after the divorce, Father took Christian to daycare at times when he had fever, and that Father would often call Mother to pick up Christian, even though it was his turn to do so. Mother said that, when Christian was with Father, Christian, rather than Father, would decide whether or not Christian would take a bath that day. Mother observed that Father and Christian usually ate hamburgers or pizza.

Mother was asked about why she wanted to change the parenting plan. Mother stated:

> . . .[A]fter the first of the year, after the first of this year, I had decided that with school approaching that Christian needed a more regular schedule than this every other day. And in light of everything else, I believed myself to be the primary caregiver and the

person that should be responsible for him. I was going to seek out full custody. It just so happens the timing thing moved – bumped everything up a little bit.

Father testified at the hearing as well. During his testimony, Father denied physically abusing Mother. Father acknowledged, however, being arrested for slamming the car door on Mother after the divorce. He admitted that, as a result of the incident, an order of protection was issued against him, which was later extended for a period of one year. Still, Father maintained that he never intended to harm Mother.

Father denied that he often asked Mother or others to pick up Christian from day care when it was his turn to do so. He also denied that he had taken Christian to day care when he was running a fever. Father testified that Christian ate healthy food when he was with him.

Father stated that Christian had become closer to his extended family since Mother and Father divorced. He said that, if he were designated the primary residential parent, his mother, brother, and sister-in-law would be available to help him care for Christian. Father testified that Christian often expressed his desire to live with Father in Lexington.

After hearing all of the testimony, the judge made the following findings:

It appears that the parties divorced in August of 2001 and had a marital dissolution agreement at that time, and a permanent parenting plan that provided for basically split time, alternating the days and then also alternating the weekends. It's worked well up until now. The mother has remarried. She has moved to Murfreesboro. This change of circumstances makes this plan that they had agreed on unworkable. The child also starting school pretty soon also makes the plan unworkable. Both parties seek to have the new parenting plan designation of primary residential parent.

The trial court noted that, in making its decision, it relied on section 36-6-108 (c) of the Tennessee Code Annotated,[2] which is applicable when the parents spend substantially equal parenting

---

[2] Subsection c of T.C.A. § 36-6-108 states:

If the parents are actually spending substantially equal intervals of time with the child and the relocating parent seeks to move with the child, the other parent may, within thirty (30) days of receipt of notice, file a petition in opposition to removal of the child. No presumption in favor of or against the request to relocate with the child shall arise. The court shall determine whether or not to permit relocation of the child based upon the best interests of the child. The court shall consider all relevant factors including the following where applicable:

(1) The extent to which visitation rights have been allowed and exercised;
(2) Whether the primary residential parent, once out of the jurisdiction, is likely to comply with any new visitation arrangement;

(3) The love, affection and emotional ties existing between the parents and child;

(continued...)

-4-

time with the child. The statute governs the potential relocation of the child with a relocating parent, based upon the best interests of the child. T.C.A. § 36-6-108(c) (2001). The trial court stated:

The Court has to look to the best interest of the child. It is essentially a determination of the primary residential parent of this child. The Court is directed in the statute to consider the same statutory factors that the Tennessee Code sets out that the Court should consider in setting custody initially. The factors are exactly the same. The Court has considered the parents' parenting skills, their respective situations, their comparative fitness as to potential primary residential parents. I considered the existence and the nonexistence – or the nonexistence of a nuclear family. I've looked at who had been the primary caregiver over the child's short life-span – he's five – about five and a half, almost six – and who was the one who primarily looked to see the child's needs were taken care of.

Since the divorce it's been about equal. Before the divorce I think that the mother was the primary caregiver, mother did it mostly; not to say that the father did not perform well in taking care of his child prior to the divorce. It just appeared that the mother was the one that was on the ground doing most of the stuff, getting appointments, doing the things that mothers do so – And she did a good job. And that doesn't mean he did a bad job. He did a good job, too.

When things like that come to Court, basically the Court has to look at it like this is my child, I'm the child's father. The child is legally a ward of the Court once a divorce is filed, and it's as if I cannot take care of my own child and I have to decide where I'm

---

[2](...continued)

(4) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
(5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
(6) The stability of the family unit of the parents;
(7) The mental and physical health of the parents;
(8) The home, school and community record of the child;
(9) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
(10) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and
(11) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child

T.C.A. § 36-6-108(c) (2001).

going to place this child for a long period of time. And I've only got two people to choose from in the whole world. And so I've got the father and I've got the mother.

The mother has moved. We live in a mobile society. People move around all the time. People change jobs, people move their residences. Children adjust. . . .

The best interest of the child is to move with the mother and to be primarily with her during the school year. The best interest of the child is to be with the father primarily during the summer months.

By order dated December 17, 2003, the court granted Mother's motion to modify the parenting plan and appointed Mother as the primary residential parent. Further, the court allowed Mother to have Christian move with her to Murfreesboro. From this order, Father now appeals.

Father raises eleven issues on appeal, which we will consolidate and restate. Father asserts that the trial court treated the case as a custody determination instead of a parental relocation matter, and consequently that the trial court applied the wrong legal standard. He contends that the trial court erred in concluding that one of the parties had to be designated as primary residential parent. Father asserts that the trial court erroneously permitted evidence of the parties' behavior prior to the divorce, allowed unauthenticated information obtained over the internet to be entered into evidence, and contends that the trial court failed to consider Christian's preference that he live with Father. Finally, Father argues that the issue of custody had been decided in the parties' marital dissolution agreement, incorporated into the divorce decree, and was *res judicata* absent a material change in the child's circumstances, and that the evidence preponderates against the trial court's designation of Mother as the primary residential parent.

Since this case was tried by the trial court sitting without a jury, we review the trial court's factual findings *de novo* accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); Tenn. R. App. P. 13(d). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Walker v. Sidney Gilreath & Assocs***., 40 S.W.3d 66, 71 (Tenn. Ct. App.2000); ***The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct. App.1999). The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. ***Campbell***, 919 S.W.2d at 35. A trial court's custody determination is also reviewed *de novo* with a presumption of correctness as to the trial court's findings of fact unless the evidence preponderates against these findings. Tenn. R. App. P. 13(d). ***Neves v. Neves***, 2004 WL 2866974, *2 (Tenn. Ct. App. Dec. 13, 2004).

On appeal, Father first asserts that the trial court treated the case as a custody determination rather than a parental relocation, and that this was error. Father bases this assertion on a remark by the trial court during opening statements that it was "going to have to rule on what basically is a change of custody basically on either side." During the hearing, counsel and the trial judge engaged in

extensive discussion of whether this was a custody determination or a parental relocation case or both. The following colloquy took place:

> MR. JOHNSON: I do want to be understood . . . that we are on the issue of parental relocation. We're not on the original – on the original custody.
>
> * * *
>
> MS. SCOTT: Your Honor, . . . the same factors that are considered in the relocation statute are also considered in the comparative fitness analysis.
> THE COURT: Well, I've looked at the statute quite a bit and the things that the court is to look at in determining a case under Section C. . . .
>
> [A]t this point in time I'm considering it to be a custody case arising out of a parental relocation filing. I've got to determine whether or not to allow the child to move with the mother or to have the child stay here with the father.

After the hearing, the trial court reiterated, as detailed above, that it was relying on the factors set forth in T.C.A. § 36-6-108(c), the parental relocation statute, to make its decision. Thus, it is clear that the trial court, in fact, considered the case to be a parental relocation case and applied the appropriate legal standard. As such, we find no error.

Father also contends on appeal that the trial court erred in concluding that one of the parties would have to be designated as primary residential parent. This is somewhat puzzling, since both parties requested in their pleadings to be designated as primary residential parent. Moreover, at the time of the hearing, Mother had already moved to Murfreesboro, approximately a two-hour drive from Lexington. Clearly the parties could not continue their unusual arrangement of alternating physical custody daily. We find that the trial court, in its remarks, was merely stating the obvious, and his comments do not reflect application of an erroneous legal standard.

Father also contends on appeal that the trial court erred in allowing testimony regarding facts and circumstances that occurred prior to the entry of original permanent parenting plan. Issues regarding admission of evidence in Tennessee are reviewed under an abuse of discretion standard. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001). Since there had never been a court hearing on the residential parenting arrangement for Christian, the trial court indicated that this testimony provided necessary background, and we find no error in this determination.

Father asserts that the trial court erred in allowing into evidence Mother's report on the quality of schools in the Murfreesboro area, taken from a web site called www.greatschools.net. Father argues that this was not properly authenticated and thus not admissible. Mother testified that she used this information, in part, to select a school for Christian and to ensure that she found a home in that school district. The trial court allowed the report into evidence, observing that "schools, government, everybody else posts information on the internet." Under the abuse of discretion standard of review, as noted above, we find this argument without merit. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001).

Father further contends that the trial court erred in failing to give enough weight to the preference of the six year old child. Father testified that Christian had told him on numerous occasions that he preferred to stay with Father. Under section 36-6-108 (c) (9) of the Tennessee Code Annotated, a trial court shall consider the "reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request." T.C.A. § 36-6-108 (c) (9) (2001). The child's preference is only one factor and the "paramount consideration in a custody case is the best interest of the child." **Harris v. Harris**, 832 S.W.2d 352, 353 (Tenn. Ct. App. 1992) (citing **Bah v. Bah**, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983)). The trial court permitted Father's testimony on Christian's statements to him about preferring to stay in Lexington with Father. There is no indication that the trial court did not accord appropriate weight to the evidence. This argument is without merit.

Father also argues that, once the parties had agreed in the marital dissolution agreement that they would share joint custody and alternate physical custody daily, the issue is *res judicata* and Mother cannot seek a change in custody absent a material change in the child's circumstances. This argument is also perplexing. At the time of the hearing, Mother had remarried, accepted a job in Murfreesboro and moved. Maintaining the same parenting arrangement, with the parties living two hours apart, was not a feasible option as evidenced by the parties' competing petitions to be designated primary residential parent. The parental relocation statute expressly provides the mechanism for a relocating parent to petition for permission to have the child relocate with the parent, and sets forth the standard to be applied in such a circumstance. This is precisely what the trial court did. We find no error in this.

Finally, Father contends that the trial court erred in designating Mother as the primary residential parent. Indeed, the resolution of this issue is difficult. Under the joint custody management, both Mother and Father had been caring, involved parents and an active part of Christian's daily life. However, Mother's relocation and Christian's entry into grade school rendered retention of the existing schedule impossible. The trial court was forced to choose between two loving parents, both of whom wanted to be designated primary residential parent. The trial court determined that Mother should be designated as primary residential parent and have Christian reside primarily with her during the school year. It decided that Christian would reside primarily with Father during the summer. Each parent would have residential parenting time when Christian is residing primarily with the other parent. The trial court made this determination based on the factors it discussed above. For this Court to overturn the trial court's decision, the facts before us must support Father's proposed finding with greater convincing effect. **Walker v. Sidney Gilreath & Assocs**., 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); **Realty Shop, Inc. v. R.R. Westminster Holding, Inc.**, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999); *Neves v. Neves*, 2004 WL 2866974, *2 (Tenn. Ct. App. Dec. 13, 2004). After a careful review of the evidence, with deference to the fact that the trial court observed the parties' testimony and demeanor, we cannot conclude that the evidence preponderates against the trial court's decision to designate Mother as primary residential parent and to permit Christian to relocate with her to Murfreesboro.

The decision of the trial court is affirmed.  Costs of this appeal are taxed to the appellant, Timothy James Watson, for which execution may issue, if necessary.


_____

_____HOLLY M. KIRBY, JUDGE

_____