IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 20, 2010 Session

IN RE: ESTATE OF ANDERSON CHARLES CARTER, III, DECEASED

Direct Appeal from the Probate Court for Lauderdale County
No. JJ-53      Rachel Anthony, Judge

No. W2009-01765-COA-R3-CV - Filed April 8, 2010

This appeal involves a mother's claims against her deceased adult son's estate. The trial court denied the majority of her claims but granted her partial relief on one issue that was not disputed by the son's estate. The mother appealed. We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAIVD R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, William Carter, Executor of the estate of Edna Carter

Lashawn A. Williams, Nashville, Tennessee, for the appellee, Michael Carter

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Anderson Charles Carter, III ("Decedent") died intestate on February 21, 2008, at the age of 58. Decedent had taken over his family's farming operation when his father died in 2001 and continued to farm over two hundred acres owned by his mother, Edna Carter. Mrs. Carter filed a claim against Decedent's estate, asserting that a 2004 Ford F-250 pickup truck and a 2388 Case International Combine titled in Decedent's name were actually her property. Mrs. Carter further claimed that she was entitled to contribution and indemnity from Decedent's estate for a portion of a bank loan she assumed while Decedent was farming her land. Finally, Mrs. Carter claimed that Decedent owed her approximately $31,000 for farm rent for 2007. The Administrator of Decedent's estate filed exceptions to the claims. After hearing testimony from various witnesses on behalf of Mrs. Carter, the trial court disallowed the claims for the pickup truck, the farm rent, and contribution on the bank loan. The trial court partially granted Mrs. Carter's claim to the combine, to the extent that it found she was entitled to 78 percent of its fair market value due to her ownership of farm equipment that was traded in when the combine was purchased. Mrs. Carter timely filed a notice of appeal. Prior to oral argument in this matter, Mrs. Carter died, and by order of this Court, William Carter, Executor of the estate of Edna Carter, was substituted as the appellant in this matter on January 25, 2010.

## II. ISSUES PRESENTED

Mrs. Carter's estate presents the following issues for review on appeal:

1. Whether Mrs. Carter was entitled to contribution from Decedent's estate on the bank debt;
2. Whether Mrs. Carter was entitled to judgment against Decedent's estate for farm rent;
3. Whether Mrs. Carter was owner of the Ford pickup truck;
4. Whether Mrs. Carter was owner of the Case International Combine.

For the following reasons, we affirm the decision of the probate court.

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2008); ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact

with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the resolution of the issues in a case depends upon the truthfulness of witnesses, the fact-finder, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC*, 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002). "The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." *Id.* We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV.   DISCUSSION

### A.   The Bank Debt

Mrs. Carter, who was 89 years old and bedridden, submitted an affidavit in support of her claims and also testified by deposition. According to her affidavit, she and her late husband owned several hundred acres of farmland that was subject to substantial debt with Gates Bank and Trust Company. After Decedent's father died, Decedent took over operating the Carter farming business. Mrs. Carter testified that she and Decedent never had any type of agreement or arrangement regarding who would own the crops produced from the land. She said that she did not pay Decedent and that he did not pay her. Instead, Decedent kept the proceeds from the crops and "tried to keep the note paid" on the bank loan at Gates Bank and Trust.

The President of Gates Bank and Trust, Mr. Elton Jones, testified that Decedent's parents had borrowed money from the Bank and secured the loans with real estate and farm equipment. He explained that the Bank was still owed money when Decedent's father died, so that when Decedent took over the farming operation for Mrs. Carter, the only way that he could obtain financing to operate the family farm was through the Farm Services Agency. Decedent then borrowed $113,000, but he paid the loan down to about $90,000. Mr. Jones said that Decedent had a bad year in farming because the crops did not produce as they usually did, and that the Farm Services Agency would not agree to finance his operations for the following year unless the parties "worked out something" with the $90,000 loan. Mrs. Carter then agreed to absorb the $90,000 and add it to her real estate loan so that Decedent could obtain financing to farm for another year. The balance of Mrs. Carter's loan then exceeded $300,000. Decedent and his brother, Galion Carter, both signed Mrs. Carter's loan

as guarantors. Galion Carter testified that the $90,000 "farming debt" was Decedent's, not Mrs. Carter's, and that Decedent did not pay the money back.

On appeal, Mrs. Carter's estate does not cite any authority for its assertion that Decedent was obligated to repay Mrs. Carter for the $90,000 debt she assumed. The claim she filed against Decedent's estate simply stated that she was entitled to contribution and indemnity for the portion of her loan that was incurred while the farming business was under the operation and control of Decedent. Apparently, the estate contends that Decedent should have repaid her because it was "his debt."[1] While that may have been true originally, the undisputed testimony was that Mrs. Carter voluntarily assumed the debt in order to allow Decedent to obtain additional financing and continue farming. There was no evidence of any agreement requiring Decedent to repay Mrs. Carter for assuming the debt. The trial court found that the loan was for the farming operation, which "ultimately inured to the benefit of [Mrs. Carter]." Finding no basis for requiring Decedent to repay $90,000 to Mrs. Carter, we affirm the probate court's denial of her claim against Decedent's estate.

### B.    Farm Rent

Next, Mrs. Carter's estate contends that it is entitled to a judgment against Decedent's estate for $31,650 for farm rent for 2007. Again, the estate cites no authority for its claim. Its brief simply states that neither Decedent nor his estate paid any rent for his farming the property, and that after Decedent died, the property was rented for $150 an acre. Therefore, Mrs. Carter's estate calculated that Decedent's estate was "indebted" to Mrs. Carter for $31,650 (211 acres multiplied by $150).

The trial court denied this claim upon finding no evidence of an underlying debt or obligation. We find that the trial court's conclusion is supported by the record. Mrs. Carter testified that Decedent had never paid her any rent at all, but he did try to "keep the note paid" at the Bank. Galion Carter, Mrs. Carter's other son, simply testified that Decedent farmed Mrs. Carter's land in 2007, that he did not pay rent, and that the land was rented after Decedent's death for $150 an acre. Because there is no evidence in the record of an agreement requiring Decedent to pay farm rent, we affirm the trial court's denial of this claim.

---

[1] We note that Mrs. Carter's estate does not present any argument regarding Decedent's liability as guarantor of her loan. Mr. Jones, the Bank President, testified that the Bank had filed its own claim against Decedent's estate for $343,782 based upon Decedent's signing of Mrs. Carter's promissory note as guarantor, in order to protect the Bank's interest in the loan.

### C.   *The Pickup Truck and Combine*

Next, Mrs. Carter's estate asserts that Mrs. Carter was the true owner of the Ford F-250 pickup truck. Mrs. Carter's affidavit submitted in support of her claim stated that she was the owner of all of the farm equipment used in the Carter farming business, including the Ford F-250 pickup truck, and that, to the best of her knowledge, Decedent did not own any farm equipment individually. Mrs. Carter's affidavit stated, "It was family practice to allow [Decedent] to deal with this property in his own name, but understood by all family members the equipment was owned by me." Her affidavit stated that the Ford F-250 pickup truck was "my property, placed in his name for insurance purposes." In her deposition, however, Mrs. Carter testified that she did not know that the combine and truck were titled in Decedent's name until after he died, and that she thought they were titled in her name.

Galion Carter testified that the F-250 was purchased with insurance proceeds after his brother William totaled another farm truck and planter in a wreck. Galion stated that the old truck was titled to him "for insurance purposes," and the planter was titled to Decedent "because [he] was over the farming operation." However, he claimed that both items actually belonged to Mrs. Carter. Galion testified that he gave Decedent the $10,000 insurance payment for the truck so that Decedent could add it to the $9,700 that Decedent received for the planter in order to buy a new truck. Galion claimed that the new truck, the F-250, also belonged to Mrs. Carter. During her deposition, Mrs. Carter testified that *she* had insurance on the old farm truck and planter, that the insurance company paid her when they were totaled, and that she purchased the F-250. However, on cross examination, Mrs. Carter testified that the insurance proceeds were *not* used to purchase the F-250. When asked whether Decedent made payments on the truck, she said, "From my money."

Besides being titled in Decedent's name, the Ford F-250 pickup truck was also listed by Decedent on his tax return, for purposes of depreciation, as his own asset. Decedent listed the cost of the truck as $23,000. Decedent's son, who was also the Administrator of Decedent's estate, submitted an affidavit prior to trial stating that the Ford F-250 was purchased by Decedent and paid off with his own money.

The trial court denied Mrs. Carter's estate's claim regarding the F-250 pickup truck, finding that the "proof does not support the claimant's ownership." Ownership is a question of fact for the trier of fact to determine from the evidence. *Cunningham v. Dep't of Safety*, No. 01A01-9509-CH-00411, 1997 WL 266851, at *2 (Tenn. Ct. App. May 21, 1997); *Wilson v. Lackey*, No. 01A01-9303-CV-00136, 1993 WL 328790, at *2 (Tenn. Ct. App. Aug. 25, 1993). The titling of a vehicle is not conclusive evidence of ownership. *Rivkin v. Postal*, No. M1999-01947-COA-R3-CV, 2001 WL 1077952, at *11 (Tenn. Ct. App. Sept. 14, 2001) (citing *Smith v. Smith*, 650 S.W.2d 54, 56 (Tenn. Ct. App. 1983); *Polland v. Safeco Ins. Co.*,

376 S.W.2d 730, 732 (Tenn. Ct. App. 1963)).

> To determine ownership of a vehicle, a trier-of-fact may consider and weigh evidence relating to (1) the circumstances surrounding the vehicle's purchase, (2) the registration of the vehicle, (3) all aspects of insuring the vehicle, (4) all parties' financial stake in the vehicle, (5) the actual possession of the vehicle, (6) the responsibility for bearing the expense of operating, maintaining, and licensing the vehicle, and (7) the ultimate right to control the vehicle, including the right to make major decisions concerning the vehicle such as its use and restrictions on its use or the sale or other disposition of the vehicle.

*Id.* (citing *Cunningham*, 1997 WL 266851, at *2).

Although there was conflicting evidence presented regarding who "owned" the truck and who truly owned the funds used to buy it, considering that the truck was titled in Decedent's name, insured by Decedent, listed on his tax return, and purchased by him, we cannot say that the evidence preponderates against the trial court's conclusion that Decedent owned the vehicle. Therefore, we affirm the trial court's denial of this claim.

Regarding the combine, it was undisputed that Decedent and Galion went together to purchase a combine and header, and that they traded in two cotton pickers belonging to Mrs. Carter for credit toward purchasing the equipment. The bill of sale states that the combine and header were sold to "Carter Brothers." The combine and header cost $115,000, and the cotton pickers were traded in for a value of $90,000, leaving a total balance owed of $25,000. The record contains a letter from a financing company indicating that Decedent, individually, financed the balance owed on the combine and header. Decedent listed the combine on his own tax return for purposes of depreciation. Decedent's son stated in his affidavit that Decedent secured the loan on the combine and worked the land to pay the note. Galion similarly testified that Decedent was making the payments on the combine with the proceeds from farming. However, he testified that the combine actually belonged to Mrs. Carter. When Decedent died, he still owed approximately $11,000 on the combine, and his brother William paid off the balance from his own personal funds. Mrs. Carter testified that the combine was supposed to be hers, and that she did not know that Decedent depreciated it on his tax return. Mrs. Carter testified that she thought that she made all the payments on the combine. When asked who wrote the checks, she said the Bank did.

Decedent's estate did not dispute that Mrs. Carter's claim to the combine should be granted in part due to her ownership of the cotton pickers that were traded for it. The trial court found that Mrs. Carter was entitled to 78 percent of the fair market value of the combine because the cotton pickers were traded in for $90,000 of the $115,000 price of the combine. Decedent's estate asks this Court to affirm this award, while Mrs. Carter's estate

contends that she was the outright owner of the combine. Based on the evidence presented, we find no error in the trial court's decision.

We note that the brief submitted on appeal on behalf of Mrs. Carter argues that a constructive or resulting trust should have been created. Because these issues were not raised in the trial court, we will not address them on appeal.

## V.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the probate court. Costs of this appeal are taxed to the appellant, William Carter, Executor of the estate of Edna Carter, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.