IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS JUNE 13, 2011

**JADA FLACK v. CURTIS McKINNEY**

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002469-08      Jerry Stokes, Judge**

**No. W2009-02671-COA-R3-CV - Filed July 6, 2011**

This appeal arises out of dependency and neglect proceedings in which custody of the minor child was awarded to the father. The mother appealed, but she failed to provide this Court with a transcript or statement of the evidence. Due to our inability to review the evidence, we affirm the decision of the lower court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY KIRBY, J., joined.

Jada Flack, Memphis, Tennessee, *pro se*

Margaret R. Styslinger, Memphis, Tennessee, for the appellee, Curtis McKinney

## OPINION

### I. FACTS & PROCEDURAL HISTORY

C.J.M. was born on December 8, 1999, to Jada Flack ("Mother") and Curtis McKinney ("Father"), who were not married and were still attending high school. In 2002, the juvenile court of Shelby County entered an order requiring Father to pay child support. At some point, Father moved to Louisville, Kentucky, and Mother and C.J.M. continued to reside in Memphis.

On September 1, 2006, when C.J.M. was five years old, Father filed a petition in the juvenile court of Shelby County, alleging that C.J.M. was dependent and neglected within the meaning of Tennessee law in that she was without proper guardianship due to Mother's failure to provide care, support, and proper supervision for her. He alleged that Mother had left C.J.M. with C.J.M.'s paternal grandmother on April 16, 2006, and that she had had no contact with C.J.M. since that date. Father requested that he be awarded custody of C.J.M.

Following a hearing, which Mother and Father both attended, a juvenile court referee recommended that Father's petition be sustained, finding that C.J.M. was dependent and neglected and without proper guardianship due to Mother's failure to provide care, support, and proper supervision. The referee found that Mother had in fact left C.J.M. with her paternal grandmother on April 16, 2006, and that she had had no contact with C.J.M. since that date. The referee recommended that Father and the paternal grandmother be awarded joint custody and guardianship of C.J.M.

Mother filed a request for a rehearing before the juvenile court judge. Following a rehearing, the juvenile court special judge entered an order finding that C.J.M. was not dependent and neglected within the meaning of Tennessee law, but that she was in need of the protection and assistance of the court and an adjudication of custody and guardianship. The special judge awarded custody to Father and granted Mother certain visitation privileges.

Mother then appealed the matter to circuit court, and a guardian ad litem was appointed for C.J.M. Mother's attorney filed a motion to withdraw on August 19, 2009. The motion was granted on October 29, 2009, and Mother proceeded *pro se*. On November 20, 2009, the circuit court entered an order sustaining the dependency and neglect petition, finding that C.J.M. was dependent and neglected while in Mother's custody during the period between April and September of 2006, as alleged in the petition. The circuit court found that during the period in question, Mother had "experienced personal difficulties including her mother's grave illness, problems in her living arrangement with a boyfriend, and, other problems," and that she failed to properly provide for or supervise C.J.M. during that time.

The circuit court also found that since custody of C.J.M. had been awarded to Father by the juvenile court, C.J.M. had been doing well and residing in a stable environment. Thus, the circuit court concluded that it was in C.J.M.'s best interest to remain in a stable environment in the home and care of Father, where she had been residing for the past three years.

Mother timely filed a notice of appeal to this Court, and she subsequently provided notice that no transcript or statement of the evidence would be submitted on appeal.

## II.  ISSUE PRESENTED

Mother's brief, which she filed *pro se*, lists a single issue for review on appeal: "Whether the court wrongfully granted custody to the father?"  For the following reasons, we affirm the decision of the circuit court.

## III.  STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them.  Tenn. R. App. P. 13(d) (2010); **Bogan v. Bogan**, 60 S.W.3d 721, 727 (Tenn. 2001).  For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect.  *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)).  When the resolution of the issues in a case depends upon the truthfulness of witnesses, the fact-finder, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues.  **Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC**, 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002).  "The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." **Id.**   We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness.  **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV.  DISCUSSION

Our ability to review the proceedings in the lower court is hampered by the absence of either a transcript or a statement of the evidence prepared in accordance with Tennessee Rule of Appellate Procedure 24(c).  The appellant has a duty to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court regarding the

issues that form the basis of his or her appeal. *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). "A recitation of facts and argument in an appellate brief does not constitute evidence and cannot be considered in lieu of a verbatim transcript or statement of the evidence and proceedings." *In re M.R.*, No. M2007-02532-COA-R3-JV, 2008 WL 2331030, at *3 (Tenn. Ct. App. W.S. June 3, 2008) (citing *State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990)). We cannot simply assume that the facts recited are true. *In re Conservatorship of Chadwick*, No. E2006-02544-COA-R3-CV, 2008 WL 803133, at * 1 (Tenn. Ct. App. Mar. 27, 2008). "The law is clear that statements of fact made in or attached to pleadings, briefs, and oral arguments are not evidence and may not be considered by an appellate court unless they are properly made part of the record." *Threadgill v. Bd. of Prof'l Responsibility of Supreme Court*, 299 S.W.3d 792, 812 (Tenn. 2009).

"Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue." *State v. Ballard*, 855 S.W.2d 557, 561 (Tenn. 1993). "It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment." *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007) (citing *McKinney v. Educator & Executive Insurers, Inc.*, 569 S.W.2d 829, 832 (Tenn. Ct. App. 1977)). Therefore, we may only reverse the trial court's decision if we find, based on the "technical" record before us, that the trial court committed an error of law. *In re M.R.*, 2008 WL 2331030, at *3 (citing *In re Conservatorship of Chadwick*, 2008 WL 803133, at *2).

Mother argues on appeal that the lower court granted custody to Father "for no apparent reason" based on "unfounded allegations." She claims that Father and the grandmother "told the judge that I left [C.J.M.] and did not come back for over three (3) months, which is a flat out lie." She goes on to state, "I told the judge what happened but it didn't matter." Thus, it is clear that Mother explained her version of the relevant events to the judge, and the judge simply credited the testimony of Father and his witnesses over the evidence presented by Mother. The circuit court's order states that the judge made his decision based upon "the testimony of the parties, the report and testimony of the Guardian ad litem, testimony of witnesses for both parties, and the entire record in this matter[.]" Because we have no transcript or statement of the evidence to review, we must presume that there was sufficient evidence before the trial court to support its decision. *See Outdoor Mgmt., LLC*, 249 S.W.3d at 377.

Mother also argues that she should have been afforded "natural custodial rights" as C.J.M.'s mother because she and Father were not married when C.J.M. was born. She does not elaborate on this assertion other than to state that "[w]hen parties are unmarried the mother's rights are superior to the father's because she is the natural custodial parent." We

note, however, that C.J.M. bears Father's last name, and the juvenile court of Shelby County entered an order in 2002 requiring Father to pay child support. Thus, we presume, despite the limited record before us, that at some point either Father voluntarily acknowledged paternity or his paternity was otherwise established in court. As a result, Mother would not be entitled to a superior claim to custody simply because she and Father remained unmarried at the time of these proceedings.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to the appellant, Jada Flack, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.