IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 7, 2017 Session

## SHERRY LYNN DALRYMPLE v. SHAWN PATRICK DALRYMPLE

Appeal from the Circuit Court for Montgomery County
No. MCCCCVDV14-1644          Ross H. Hicks, Judge

_____

No. M2016-01905-COA-R3-CV

_____

In this post-divorce litigation, Father, who had been designated primary residential parent of the parties' two children, filed a petition to modify the parenting plan, citing his military reassignment from Fort Campbell, Tennessee, to Huntsville, Alabama. Mother filed a counter petition, seeking to be named the primary residential parent. The parties reached agreement as to the parenting schedule but could not agree on which of them would be the primary residential parent. The trial court held a hearing and determined that it was in the children's best interest for Mother to be named the primary residential parent. Father appeals. Discerning no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P. J., M. S., and ANDY D. BENNETT, J., joined.

Mark A. Rassas and Julia P. North, Clarksville, Tennessee, for the appellant, Shawn Patrick Dalrymple.

Sharon T. Massey, Clarksville, Tennessee, for the appellee, Sherry Lynn Dalrymple.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

Sherry Dalrymple ("Mother") and Shawn Dalrymple ("Father") are the parents of two minor children, James and Ethan, who were ages 10 and 8, respectively, at the time this proceeding was initiated. Mother and Father were divorced in Montgomery County Circuit Court on February 5, 2015. The divorce decree incorporated an agreed parenting

plan, naming Father primary residential parent and giving the parties equal parenting time, with each parent having the children for a week at a time.

Father filed a Petition to Modify Parenting Plan on March 31, 2016, asserting that he was being reassigned from Fort Campbell to Huntsville, Alabama, and that his reassignment constituted a material change of circumstances justifying modification of the parenting plan; with his petition, he filed a proposed parenting plan that continued his designation as primary residential parent and gave him 265 days of parenting time and Mother 100 days, to be exercised every other weekend. Mother answered, denying the salient allegations of the petition; she included a counter-petition in which she sought to hold Father in contempt, to have the court determine that certain of Father's conduct constituted a material change of circumstance, and to modify the plan to designate her as primary residential parent.[1]

In mediation, the parties were able to agree on the residential parenting schedule for the parent who was not the primary residential parent; they were not able to resolve the question of which parent would be designated the primary residential parent. A hearing on this issue was held on July 11 and 26, 2016. At the hearing, in addition to himself, Father called the following witnesses: Billy Gene Bowie, Ph.D., a licensed psychologist who conducted family therapy prior to the divorce and also individual therapy for one of the children; Daryl Dalrymple, paternal grandfather; Matthew Tucker, Father's brother in law; Betty Berryhill, paternal grandmother; and Holly Mills, maternal grandmother. In addition to herself, Mother called the following witnesses to testify: Christen Edwards, a friend of Mother's; Andrea Nance, Mother's sister; and Daniel Otero, characterized by Mother's attorney as Mother's "significant other." Twenty-one exhibits were entered into evidence. At the conclusion of the hearing, the parties were directed to file proposed findings of fact and conclusions of law, which both did.

On August 26, 2016, the court entered a Memorandum Opinion and Order, making findings as to the factors at Tennessee Code Annotated section 36-1-106(a); the court designated Mother as primary residential parent, determined that the children should remain in Tennessee with Mother, and awarded Mother 265 days of residential parenting time. Pursuant to the agreement reached in mediation, the court awarded Father 100 days of residential parenting time to be exercised every other weekend, and ordered him to pay child support. At the court's instruction, Mother submitted a revised modified parenting plan with child support worksheets, and on September 30, 2016, the court entered an order setting Father's support obligation at $1,572 per month; the court also dismissed the contempt petition.[2]

---

[1] Mother's Answer references her proposed parenting plan; however, the plan was not attached to the pleading and is not otherwise present in the appellate record.

[2] Father thereafter filed a motion to set aside the September 30 Order relative to child support, which was

Father appeals, contending that the findings in the August 26 Order are not supported by the record and asking that we reverse the trial court's decision, name him primary residential parent, and permit him to relocate with the children.

## II. STANDARD OF REVIEW

This case was tried by the trial court sitting without a jury, so we review the factual findings *de novo* with a presumption of correctness unless the preponderance of the evidence is otherwise. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); Tenn. R. App. P. 13(d)). To preponderate against a trial court's finding of fact, the evidence has to support another finding of fact with greater convincing effect. *Watson*, 196 S.W.3d at 701 (citing *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). We review the court's legal conclusions *de novo* with no presumption of correctness. *Watson*, 196 S.W.3d at 701 (citing *Campbell,* 919 S.W.2d at 35).

## III. DISCUSSION

Even though the current litigation was precipitated by Father's relocation to Huntsville, Alabama, he initiated the proceeding by filing a petition governed by Tennessee Code Annotated section 36-6-101(a)(2)(C) seeking to modify the residential parenting schedule; this statute requires that he prove by a preponderance of the evidence that a material change of circumstance affecting the children's best interests has occurred. When a change in designation of the primary residential parent is sought pursuant to section 36-6-101(a)(2)(B), as pursued by Mother, this court has interpreted the statute to additionally require that the petitioner prove that the change in circumstance be "significant" before it will be considered material. *In re T.C.D.*, 261 S.W.3d 734, 744 (Tenn. Ct. App. 2007). Under either procedure, once the petitioner has proven a material change of circumstance, the court is to make a determination as to whether a modification is warranted based on the best interest of the children, applying the factors at section 36-6-106(a). The parties do not dispute that a material change of circumstance has occurred warranting a modification of the parenting plan; the issues before us concern the trial court's findings as to the children's best interest.[3]

---

heard on November 17. On that date, in accordance with an agreement between the parties, the court modified the previous order and set child support at $1,456 per month.

[3] On June 1, 2016, after both parties had filed their petitions, Father sent Mother a notice of his intent to relocate, presumably in accordance with the Parental Relocation Statute at Tennessee Code Annotated section 36-6-108(a); Mother did not file a petition opposing the relocation and, given the nature of the petitions which had been filed, she was not required to do so. Since the parties agreed that there was a material change of circumstance and had agreed on a residential parenting schedule, the only issue before

3

We first address Father's complaint, based on being required to file his proposed findings of fact and conclusions of law first, that the court "designat[ed] . . . Father as the party bearing the burden of proof"; he contends that this indicated that the ultimate decision was "tainted" and that the court erred as a matter of law. This argument is without merit. Father initiated the proceeding by filing a petition to modify the parenting plan and, consequently, bore the burden of proof with respect to the matters inherent therein, including the best interest of the children, which was the only issue remaining at trial. Trial courts have the inherent authority to control their dockets and the proceedings before them, and reviewing courts will not second-guess a trial court's exercise of that authority unless it has acted unreasonably, arbitrarily, or unconscionably. *Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003); *Hodges v. Attorney General*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). The requirement that Father submit his findings and conclusions first was a discretionary matter, and we find no abuse of discretion in that regard.

Father argues that the evidence preponderates against the court's findings of fact relative to the factors at Tennessee Code Annotated section 36-6-106(a).[4] Father

the trial court was whether a change in the designation of the primary residential parent was in the best interest of the children.

[4] Tennessee Code Annotated section 36-6-106(a) reads:

In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:
(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;
(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

4

contends generally that the court "arbitrarily adopted the findings and conclusions submitted by the Mother" and states in his brief at multiple points that the court adopted Mother's proposed findings "verbatim."

With respect to party-prepared findings of fact, the Tennessee Supreme Court has held:

> [M]ost courts have approved, but not recommended, the practice of trial courts receiving and using party-prepared findings of fact, conclusions of law, and orders as long as two conditions are satisfied. First, the findings and conclusions must accurately reflect the decision of the trial court. Second, the record must not create doubt that the decision represents the

---

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

trial court's own deliberations and decision. Accordingly, reviewing courts have declined to accept findings, conclusions, or orders when the record provides no insight into the trial court's decision-making process or when the record "casts doubt" on whether the trial court "conducted its own independent review, or that the opinion is the product of its own judgment[.]"

There are, to be sure, acceptable reasons for permitting trial courts to request the preparation of proposed findings of fact, conclusions of law, and orders. They can promote the expeditious disposition of cases, and they may, when used properly, assist the trial court in placing the litigants' factual and legal disputes in sharper focus. In the final analysis, the ultimate concern is the fairness and independence of the trial court's judgment.

*Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 315–16 (Tenn. 2014) (internal citations and footnote omitted).

The court did not rule from the bench, but took the matter under advisement and required to the parties to submit proposed findings and conclusions. While the court adopted the format of Mother's findings, the court made many edits to them and incorporated some of Father's proposed findings in the court's findings. As more fully explained hereinafter, the findings were supported by the evidence. We have reviewed each party's proposed findings and the court's order and do not find any evidence that leads us to doubt that the findings are the result of the court's own independent review and the product of the court's own judgment.

In the portion of the Memorandum Opinion and Order entitled "Findings of Facts" the court made three general findings, labeled "A," "B," and "C," and a fourth finding, "D," which contained the court's determination relative to each factor at Tennessee Code Annotated section 36-6-106(a).

With respect to paragraph A, Father argues that the court's finding "that the Father knew that he was planning to relocate even when he was negotiating the original Parenting Plan and there was no relocation mentioned in the divorce document or Parenting Plan and acknowledged that he needed to be primary residential parent in order to have an advantage when he relocates" was unsupported by the evidence. This argument is inconsistent with the court's finding in that paragraph and the evidence. The court actually stated:

Mr. Dalrymple is active duty military. He plans to relocate to the Huntsville, Alabama area due to his military obligations. He has known that he was planning to move and knew this fact even during the time he was negotiating this parenting plan back in December, 2015. He admitted

6

that this move was anticipated by him, although there is no mention of any relocation in any divorce documents or parenting plan. He admitted he needed to be primary parent in order to have an advantage when he did relocate.

The court also addressed this matter in the discussion of Tennessee Code Annotated section 36-1-106(a)(14). In the interest of brevity and clarity, we will discuss Father's remaining contentions relative to that finding in our discussion of the specific statutory factors.

Father takes issue with the findings in paragraph B, which reads:

Mr. Dalrymple has not resolved his anger issues with his former spouse. He continues to refuse to work with her regarding the best interest of the children. During conversations regarding simple issues with the children such as doctor appointments or parent teacher conferences, his response is regularly "I don't need any help from you," 'You can do us a favor and get out of our life," or "I can provide them with all that they need, we don't need you."

As evidence which he argues preponderates against these findings, Father cites to his testimony that he had given up the Thanksgiving holiday to allow Mother to have the boys on Christmas Day and Mother's Day; that he had "step[ped] aside as an assistant coach so the Mother could be team mom"; that he was frustrated due to Mother "tr[ying] to bypass the league draft system by calling coaches"; and that he "wanted to make a joint health decision during his parenting time by speaking to the child [about his vomiting before permitting Mother to take him home], but the Mother refused to do so." We have reviewed the testimony cited by Father and conclude that it does not preponderate against the finding that Father has not resolved his anger issues. Substantial and material evidence in the record, including Mother's testimony and emails and text messages from Father to Mother, supports this finding.

In paragraph C, the court found:

Ms. Dalrymple has moved on in her life and has employment with Workforce Essentials. She resides in Montgomery County with her mother. She works during the day only and is available to care for the children on a daily basis. Ms. Dalrymple testified that she has attempted to get along with her former spouse, however, he makes it clear that he has no intention of working with her.

The evidence does not preponderate against these findings. Father complains that the court failed to note that the children's maternal grandmother "had mental health

7

issues," and that "both Mother and grandmother take medication for mood and behavioral issues, that the Mother has given some of the grandmother's medication, including Phenergan, to the children, and that the grandmother has no driver's license because of her three DUI's." Inasmuch as the court made findings relative to maternal grandmother in its consideration of statutory factors (9) and (12), we will consider Father's argument in this regard in our discussion of those factors.

In paragraph D the court stated:

This is a relocation case pursuant to T.C.A. § 36-6-108.[5] There is no question that the parties are actually spending substantially equal amounts of time with the children, and, therefore, the Court must look to the factors outlined in T.C.A. § 36-6-106. . . .

The Court proceeded to make findings with respect to each factor and to state in whose favor the factor weighed. Father challenges the court's findings with respect to factors (1), (2), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), and (14).

In his discussion of the specific statutory factors, Father does not cite to any evidence in the record that preponderates against the court's findings as to factors (4), (6), (9), (11), (13), and (14), as required by Rule 27(a)(7)(A) of the Rules of Appellate Procedure, as well as Rule 6(a)(b) of the Rules of the Tennessee Court of Appeals. Accordingly, with the exception of factors (9) and (14), which we will discuss below, we deem his issues with respect to those factors to be waived. *See, e.g., Murray v. Miracle*, 457 S.W.3d 399, 403 (Tenn. Ct. App. 2014); *Bean v. Bean,* 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000); *Matter of Throneberry*, 754 S.W.2d 633, 636 (Tenn. Crim. App. 1988); *Pinney v. Tarpley*, 686 S.W.2d 574, 579 (Tenn. Ct. App. 1984).

We have carefully reviewed the transcript of the evidence, the exhibits, the court's order, Father's arguments on appeal, and the arguments in Mother's brief, and conclude that, with the exception of factor (8), the evidence with respect to each factor does not preponderate against the trial court's findings of fact; we shall separately discuss factors (9), (12) and (14).

With respect to factor (8), the trial court found, in part, that "[t]he Mother has no family history of addiction." Both Mother and maternal grandmother testified that maternal grandmother has struggled with alcohol addiction in the past, is currently in recovery, and has been sober for four years; accordingly, the evidence preponderates against this finding. There is no evidence, however, that Mother has a history of

---

[5] As previously stated, the court was not called upon to apply the relocation statute but was correct in addressing the best interest factors at Tennessee Code Annotated section 36-6-106(a).

addiction. In addition the court made numerous other findings relative to this factor, which are fully supported by the evidence.

Father takes issue with the court's finding with respect to best interest factor (14):

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules[]

Both parents are employed. The Mother's schedule is a standard 8-4:30 p.m. position with Workforce Essentials in Clarksville, Tennessee. She was a stay at home mother for the majority of the marriage, however, she became employed after the parties' separation. The Mother has been actively involved in all aspects of the children's lives including their sporting events.

Both parties have participated in their extracurricular activities, Father as a parent volunteer/assistant coach and Mother as the team mother and volunteer.

The Mother's schedule is more stable for the children and she is able to personally do things for them. The Father is in the military, is on a career track and may deploy and/or be transferred again. The Father knew that he was going to be moving and he should not be rewarded for intentionally withholding information and "planning" this relocation. He testified that he knew this would happen and he intentionally wanted to be the primary in order to have an advantage when this relocation issue came up in court. Father's position in Alabama is an office job and will be flexible for parenting obligation. He lives within minutes of other family members who can provide assistance if a conflict arises.

This factor favors both parents equally.

Father takes particular umbrage with the statement that he intentionally withheld information about the reassignment to Huntsville, citing to his testimony that Mother was aware of his potential relocation to Huntsville at the time of the divorce in support of his position that the finding is not supported by the record.

There is no testimony or other evidence that Father intentionally withheld information relating to an anticipated relocation at the time he and Mother entered into the agreed parenting plan; to the extent this statement by the court is construed as a factual finding, it is unsupported. The court correctly noted in paragraph A of the Memorandum Opinion and Order, and our review of the record confirms, that the statement that "there is no mention of any relocation in any divorce documents or

parenting plan" is supported by the record. Viewed in light of the fact that the court held that factor (14) weighed equally in favor of Father, it is apparent that the court did not penalize Father in this regard.

With respect to factors (9)[6] and (12)[7], in paragraph C the court made findings relative to Mother's then-current living situation, including the fact that she resides with her mother. Father complains that court ignored pertinent evidence about maternal grandmother and argues:

> The court referenced that the Mother was residing with her mother, without noting that the maternal grandmother had mental health issues, that both Mother and grandmother take medication for mood and behavioral issues, that the Mother has given some of the grandmother's medication, to include Phenergan, to the children, and that the grandmother has not driver's license because of her three (3) DUI's.

We discuss these factors as well as paragraph C together.

Father does not cite to evidence that preponderates against any of the trial court's findings; he argues that the court "neglects" other evidence of issues related to maternal grandmother's continued use of medication and mental health. The evidence cited by Father establishes that the maternal grandmother did not have a driver's license due to past DUI convictions, that she takes medication for attention deficit hyperactivity disorder and anxiety, and that Mother gave some of grandmother's vomiting medication to one of the boys who was "vomiting profusely."[8] In discussing factor (9), the court addressed the maternal grandmother's interactions with the children; the court acknowledged her history of alcohol addiction and notes that she was in recovery, and holds that "there are no complaints regarding her care of the children." In its

---

[6] With respect to factor (9), the court made the following findings relative to the maternal grandmother:

> The maternal grandmother admitted that she is an alcoholic. She does not currently have a driver's license. She does not drive with the children; the Mother has other persons to assist if necessary. The maternal grandmother has lived with both the parents when they were married and now resides with the Mother. The grandmother is a teacher in the public school system and babysits the children on occasion. There are no complaints regarding her care of the children.

[7] With respect to factor (12), the court found ". . . the maternal grandmother has had issues but is a recovering alcoholic and has been sober for several years. There is no indication that her current behavior or character presents any problem."

[8] Mother testified that she gave her son some of maternal grandmother's Phenergan, as it was "what safely has been recommended in the past to stop that vomiting."

10

consideration of factor (12) the court discussed the evidence relating to other persons who reside in or frequent the parents' homes, including Mr. Otero and the paternal grandparents, and concluded that "[t]here are no indications that the character and/or behavior any of these individuals has any harmful impact on the children."

We discern no error in the court's decision to not include the factual findings as suggested by Father. The findings made by the court address the statutory factors it is obliged to consider and, as noted, are supported by the evidence. The evidence cited by Father does not preponderate against the Court's findings.

In the course of making its ruling, the court determined that factors (1), (12), and (14) favored both parents equally; that factor (2) weighed heavily in favor of Mother; that factors (4), (5), (6), (7), (8), (9), (10), and (11) favored Mother; that factor (3) was neutral; and that factors (13) and (15) were not applicable. Many of Father's arguments hinge on his assertion that the trial court assigned improper weight to certain factors or certain evidence with respect to those factors.

In considering of Father's contentions, we are mindful of the standard set forth in *Johnson v. Johnson*:

> "[T]rial courts are vested with wide discretion in matters of child custody" and . . . "the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves," appellate courts "are reluctant to second-guess a trial court's decisions." The courts' paramount concern in a custody case is the welfare and best interest of the parties' minor children. This determination necessarily turns on the particular facts of each case.

165 S.W.3d 640, 645 (Tenn. Ct. App. 2004) (internal citations omitted).

We conclude that there is testimony or other evidence in support of each of the court's findings of fact, with the exception of one finding made with respect to factor (8). The testimony and other evidence cited by Father, while sometimes conflicting with that of Mother, does not preponderate against the court's findings or compel different findings. *See Watson*, 196 S.W.3d at 701. Much of Father's argument is centered on the conclusions reached by the court on the basis of evidence with which Father disagrees or the weight assigned by the court to specific evidence; the evidence cited by Father does not, however, conflict or compel the findings that Father suggests. We find no abuse of discretion in the court's determination that naming Mother primary residential parent was in the children's best interest.

11

## IV. CONCLUSION

In light of the foregoing, we affirm the judgment of the trial court.

_____
RICHARD H. DINKINS, JUDGE