# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 22, 2015 Session

## IN RE CONSERVATORSHIP OF BILL BARTLETT

**Appeal from the Circuit Court for Davidson County**
**No. 14P381    David Randall Kennedy, Judge**

_____

**No. M2014-02027-COA-R3-CV – Filed December 4, 2015**
_____

This is a conservatorship case. Appellee hospital filed a petition for appointment of an expedited limited healthcare fiduciary for the Appellant patient because the hospital believed that Appellant could not be safely discharged without assistance. The trial court determined that the appointment of a limited healthcare fiduciary was appropriate and in the Appellant's best interest. The trial court then granted Appellee's motion to amend its petition to include the appointment of a conservator. The trial court found that Appellant is an individual with disabilities, and further found that it is in the Appellant's best interest to have a conservator appointed. Appellant appeals. Discerning no error, we affirm and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded.

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER, J., and ARNOLD B. GOLDIN, J., joined.

Jacqueline B. Dixon, Attorney Ad Litem, Nashville, Tennessee, for the appellant, Bill Bartlett.

Monica D. Edwards, Nashville, Tennessee, for the appellee, Vanderbilt University Medical Center.

A. Michelle Poss, Conservator, Nashville, for the appellee, Conservatorship of Bill Bartlett.

1

## OPINION

## I.     Background and Procedural History

On February 24, 2014, Appellant Bill Bartlett was admitted to Vanderbilt University Medical Center ("Appellee" or "VUMC") for treatment of general weakness and a history of strokes, hypertension, renal failure, and dementia. Prior to his stay at VUMC, Mr. Bartlett had been a patient at Middle Tennessee Mental Health Institute ("MTMHI") from January 2012 until December 2013. VUMC believed that Mr. Bartlett needed assistance to ensure a safe discharge from the hospital. As Mr. Bartlett had no family willing or able to assist him, VUMC filed a petition in the Circuit Court of Davidson County for appointment of an expedited limited healthcare fiduciary. On March 6, 2014, the trial court heard Appellee's petition, and the court appointed a healthcare fiduciary and an attorney *ad litem* for Mr. Bartlett. Pursuant to Tennessee Code Annotated section 34-1-133(b), the trial court scheduled a hearing on the appropriateness of the appointment for March 11, 2014. On statements of counsel and a review of a physician's report completed by Dr. Ralph Habermann, M.D., the trial court determined that there was clear and convincing evidence that Mr. Bartlett was in need of assistance. Accordingly, the trial court found that the appointment of a limited healthcare fiduciary was appropriate and in Mr. Bartlett's best interest. The trial court also granted VUMC's oral motion to amend its petition for appointment of a conservator and set a hearing to determine the continuing need for a fiduciary.

2

On April 14, 2015, the trial court heard Appellee's amended petition for appointment of a conservator. Mr. Bartlett testified at the hearing and objected to the appointment of a conservator. The trial court found Mr. Bartlett was a person with a disability as defined by Tennessee Code Annotated section 34-1-101 and determined it was in his best interest that a temporary conservator be appointed over his person and estate. The decision of the trial court was based, in part, on Mr. Bartlett's testimony that he owned more than 1,000 acres and that he had been institutionalized for the past sixteen years.

Following the court's announcement of its decision, Mr. Bartlett became agitated and refused to abide by the order appointing his conservator. He stated in open court that he would rather go to jail than return to VUMC or to any other medical facility. The trial court held Mr. Bartlett in contempt and had him involuntarily committed to MTHMI. The trial court expressly found "on the basis of clear, unequivocal and convincing evidence that [Mr. Bartlett] is subject to involuntary care and treatment."

On May 2, 2014, the Appellee took the deposition of Dr. Mahshid Moradiseresht, Mr. Bartlett's treating physician at MTHMI. In her deposition, which was admitted into evidence, Dr. Moradiseresht testified that Mr. Bartlett suffers from a chronic mental condition known as vascular dementia. Dr. Moradiseresht further testified that Mr. Bartlett could not care for himself or live independently and that he needed someone to assist him with medical decisions. Dr. Moradiseresht testified that there was an organic cause for the dementia, but ultimately opined that Mr. Bartlett's mental condition could adversely affect

3

his physical well-being.

On June 2, 2014, the trial court conducted a hearing on VUMC's amended petition to appoint a conservator. On June 6, 2014, the trial court entered an order appointing a conservator. On July 3, pursuant to Tennessee Rule of Civil Procedure 59, Mr. Bartlett, through his attorney *ad litem*, filed a motion to alter or amend the trial court's ruling appointing a conservator. Shortly thereafter, Mr. Bartlett filed an amended Rule 59 motion to include a request that the trial court clarify prior orders regarding payment of fees. On September 5, 2014, the trial court entered an order denying Mr. Bartlett's motion to alter or amend the judgment. The trial court found that

> Mr. Bartlett suffers from vascular dementia, delusions, significant paranoia and that he is incapable of performing activities of daily living without prompting. In addition, Mr. Bartlett's own testimony suggested that his view of his life and circumstances was both unrealistic and not based in fact. For example, although he is seventy two-years old, Mr. Bartlett testified that he is eighty years old. . . .[B]ased on the totality of the circumstances, Mr. Bartlett is incapable of managing his own affairs and taking care of his activities of daily living. . . .

## II.    Issues

Mr. Bartlett appeals. He presents the following issue on appeal:

> Whether the trial court erred in appointing him a conservator when the evidence presented at trial did not clearly and convincingly establish that he was disabled and in need of the assistance of the court.

## III.    Standard of Review

4

"A petition for the appointment of a conservator requires the lower court to make legal, factual, and discretionary determinations." *Crumley v. Perdue,* No. 01-A-01-9704-CH00168, 1997 WL 691532, at *2 (Tenn. Ct. App. Nov. 7, 1997). Therefore, appellate courts may need to apply more than one standard of review when reviewing a lower court's decision regarding the request for a conservatorship. *Id.* In reviewing any findings of fact by the trial court, our review is *de novo* "upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W. 3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assoc.*, 40 S.W. 3d 66, 71 (Tenn. Ct. App. 2000); and *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions on questions of law *de novo,* but no presumption of correctness attaches to the trial court's legal conclusions. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

In Tennessee, a "court must find by clear and convincing evidence that the respondent is fully or partially disabled and that the respondent is in need of assistance from the court before a fiduciary can be appointed." Tenn. Code Ann. § 34-1-126. "Statutory interpretation is a question of law, which we review *de novo,* with no presumption of correctness given to the courts below." *Sullivan v. Edwards Oil Co.,* 141 S .W.3d 544, 547 (Tenn. 2004) (citing

*Wallace v. State,* 121 S.W.3d 652, 656 (Tenn. 2003)). While the "clear and convincing" standard is more exacting than the preponderance of the evidence standard, it does not require such certainty as the beyond a reasonable doubt standard. *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn. Ct. App. 1992). Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established. *In re Estate of Armstrong*, 859 S.W. 2d 323, 328 (Tenn. Ct. App. 1993).

Finally, to the extent that the trial court's discretionary decisions are challenged on appeal, such decisions are reviewed for an abuse of that discretion. *In re Conservatorship of Davenport,* No. E2004-01505-COA-R3-CV, 2005 WL 3533299, at *6 (Tenn. Ct. App. Dec. 27, 2005). A trial court abuses its discretion when it reaches a decision that is not supported by the evidence, when it applies an incorrect legal standard, or when it reaches a decision that contravenes logic or employs reasoning that causes an injustice to the complaining party. *See Owens v. Owens,* 241 S.W.3d 478, 496 (Tenn. Ct. App. 2007).

## IV.    Analysis

On appeal, Mr. Bartlett argues that the evidence presented at trial did not clearly and convincingly establish that he was disabled and in need of the assistance of the court. "The threshold question in every conservatorship proceeding is whether the person for whom a

conservator is sought is disabled or incapacitated. If the answer is no, the trial court cannot appoint a conservator." *In re Conservatorship of Groves*, 109 S.W.3d 317, 331 (Tenn. Ct. App. 2003), Tenn Code Ann. §34-1-126. Tennessee courts have long recognized that the aging process, by itself, is not a disabling condition. *In re Groves*, 109 S.W.3d at 331. Although old age may "excite the vigilance of the court," *Condry v. Coffey*, 12 Tenn. App. 1, 19 (1930), advanced age alone does not provide grounds for appointing a conservator or limited guardian. *Hadley v. Latimer,* 11 Tenn. (3 Yer.) 537, 545 (1832); *In re Estate of Oakley,* 936 S.W.2d 259, 260 (Tenn. Ct. App. 1996); *Smith v. Smith,* 55 Tenn. App. 136, 160–61, 397 S.W.2d 186, 197 (1965); *Rogers v. Hickam*, 30 Tenn. App. 504, 512–13, 208 S.W.2d 34, 37 (1947).

However, if the court determines that a person is disabled, the court must then

> determine based on the nature of the incapacity, whether the disabled person requires full-time supervision, protection, or assistance or whether partial supervision, protection, or assistance will suffice. If the trial court determines that the disabled person requires any sort of supervision, protection or assistance, it must enter an order appointing a conservator and must specifically "[e]numerate the powers removed from the respondent and vested in the conservator." Tenn. Code Ann. §34-3-107(2). Any power not specifically vested in the conservator remains with the person for whom the conservator has been appointed."

*In re Groves*, 109 S.W.3d at 331.[1]

---

[1] Tenn. Code Ann. §34-3-107(2) was amended in 2013. Although the precise language has changed, the intent of the statutes remains the same. The current statute reads as follows:
      (a)     If the court determines a conservator is needed, the court shall

Capacity encompasses two concepts, functional capacity and decision-making capacity. *Id.* at 334-35. Functional capacity relates to a person's ability to take care of himself and his property and to perform basic daily activities. These activities include personal hygiene, nutrition, and addressing routine healthcare needs. An inquiry into functional capacity seeks to ascertain whether a person has functional impairment that endangers physical health or safety by rendering the person unable, either wholly or partially, to care for himself. *Id.*

Decision-making capacity relates to one's ability to make and communicate decisions with regard to caring for himself and his property. Decision-making capacity involves a person's ability to: (1) take in and understand information; (2) process the information in accordance with his or her own personal values and goals; (3) make a decision based on the information; and (4) communicate the decision. However, choices that are based on deranged or delusional reasoning or irrational beliefs may signal decision-making incapacity. *Id.*

Dr. Moradiseresht is a licensed psychiatrist and was the attending physician for Mr. Bartlett during both his January 24, 2012 through December 19, 2013 and April 14, 2014

---

enter an order which shall:
\*\*\*
(2) Enumerate the powers removed from the respondent and those to be vested in the conservator. To the extent not specifically removed, the respondent shall retain and shall exercise all of the powers of a person without a disability.

8

through May 16, 2014 stays at MTMHI. In January 2012, Mr. Bartlett was admitted to MTMHI's extended treatment program after receiving several charges including DUI, two counts of public intoxication, and unlawful possession of weapon. Dr. Moradiseresht testified that Mr. Bartlett had been diagnosed with vascular dementia, and his condition was chronic. At the time Mr. Bartlett was initially admitted, he was decompensating and unable to remember things very well. He would also make claims that were not true. During Dr. Moradiseresht's 2013 treatment and observation of Mr. Bartlett, he was delusional, oppositional, and not cooperative with his treatment plan. Mr. Bartlett believed that someone was trying to poison him. He refused medication, refused to participate in groups, and refused to take care of his own personal hygiene and grooming. Mr. Bartlett often did not care how many days or weeks he went without changing his clothes.

Dr. Moradiseresht also testified that Mr. Bartlett had a limited capacity to understand what is going on around him. She referenced Mr. Bartlett's legal charges, which he never understood, as an example of his limited capacity. According to Dr. Moradiseresht, Mr. Bartlett maintained that he did not have any legal charges against him, even though he was released to the custody of the Marshall County jail upon discharge from MTMHI in December of 2013. Likewise, Dr. Moradiseresht testified that when Mr. Bartlett was brought to MTMHI in April 2014, he did not have any understanding of why he had been in court, and he was decompensating.

Dr. Moradiseresht also testified that Mr. Bartlett was on medication for dementia,

thyroid, blood lipids, as well as a mood stabilizer. She further testified that these medications would help Mr. Bartlett's overall mental status. It is worth noting that Mr. Bartlett's conservator was forced to file a motion requiring Mr. Bartlett to undergo a medical examination so that his medications could be renewed. This motion was filed after the hearing on Mr. Bartlett's motion to alter or amend judgment was heard, but before the order was entered. The motion filed by the conservator was granted.

On appeal, Mr. Bartlett argues that the diagnosis of vascular dementia alone is insufficient to warrant the appointment of a conservator. We agree. While identification of the disabling illness or condition is important, "the pivotal inquiry involves not merely the diagnosis but also the effect that the illness, injury, or condition has had on the capacity of the person for whom a conservator is sought." *In re Groves*, 109 S.W.3d at 331. However, in this case, Dr. Moradiseresht testified that she did not believe Mr. Bartlett would be able to visit a pharmacy and obtain his medication, shop for groceries, or pay his bills. When asked whether Mr. Bartlett could cook his own meals, Dr. Moradiseresht testified that cooking can be a dangerous activity for patients diagnosed with dementia, and unsupervised cooking is discouraged. From the doctor's testimony, the trial court was able to determine that "Mr. Bartlett suffers from vascular dementia, delusions and significant paranoia, and that he is incapable of performing his activities of daily living without prompting."

Mr. Bartlett also argues that Dr. Moradiseresht's testimony did not provide clear and convincing evidence that he was in need of a conservator. His basis for this argument stems

from the cross examination of Dr. Moradiseresht, in which she testified that since treating him in 2013, Mr. Bartlett's delusions have improved and he is no longer convinced someone is trying to poison his food. Mr. Bartlett also cites Dr. Moradiseresht's testimony that Mr. Bartlett's dementia has not worsened since she treated him in 2013.

While Mr. Bartlett's appraisal of Dr. Moradiseresht's testimony is correct, it is important to note that Dr. Moradiseresht did not testify that his dementia had improved. Further, the trial court did not solely rely on Dr. Moradiseresht's testimony in reaching its determination. In addition to Dr. Moradiseresht's testimony, the trial court also relied on Mr. Bartlett's testimony. Mr. Bartlett testified that he is eighty years old even though he is actually only seventy-two years old. Mr. Bartlett also testified that he owns over 1,000 acres of land; when in fact, he only owns a lot with a trailer, which is uninhabitable. The trial court also relied on Mr. Bartlett's testimony that he has been institutionalized for the past sixteen years. The trial court found that Mr. Bartlett's testimony suggested that his view of his life and circumstances was both unrealistic and not based in fact. The trial court further found that "based on the totality of the circumstances and particularly Mr. Bartlett's presentation to the Court on April 14, 2014, Mr. Bartlett is incapable of managing his affairs and taking care of his activities of daily living, the court finds that Mr. Bartlett is in need of a conservator." From our review, the evidence clearly and convincingly support the trial court's ultimate conclusion.

## V. Conclusion

For the foregoing reasons, we affirm the order of the trial court. We remand the case for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against Appellant, Bill Bartlett and his surety, for all of which execution may issue if necessary.

_____

KENNY ARMSTRONG, JUDGE
