IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2018

**IN RE JAXON W.**

**Appeal from the Juvenile Court for Shelby County**
**No. U6372                Harold W. Horne, Special Judge**

_____

**No. W2018-00629-COA-R3-JV**
_____

In this appeal of the juvenile court's determination of a petition to establish visitation, the father appeals the setting of supervised therapeutic visitation for him. The father argues that the court disregarded evidence that was favorable to him, that the court erred in relying upon testimony of the child's counselor, and that the court erred in awarding attorney's fees to Mother. Upon our review, we vacate the decision setting the father's visitation and remand the case for the court to enter a judgment that discusses the factors set forth at Tennessee Code Annotated 36-6-106(a)(1)-(15) and makes appropriate findings relative thereto; we conclude that Father has waived any issue pertaining to the testimony of the child's counselor, as he failed to object to the testimony at trial; in all other respects, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated in Part and Affirmed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KENNY W. ARMSTRONG, J., joined.

Cara Welsh, Chattanooga, Tennessee, for the appellant, Gerald W.

Lee Ann Pafford Dobson, Germantown, Tennessee, for the appellee, Jackie W.

**OPINION**

**I. FACTUAL AND PROCEDURAL HISTORY**

Gerald W. ("Father") and Jackie W. ("Mother") are the parents of Jaxon, who was born in May 2008; an order was entered on July 3, 2008, establishing Father's paternity and setting his child support obligation; visitation was not set in the order.

On January 21, 2016 Father filed a petition seeking visitation with Jaxon "every other weekend, holidays, and 4 vacation weeks during summer months." The petition was set for initial hearing before a magistrate on March 10, 2016, at which time the hearing was continued to June 9; the order continuing the case provided that, pending the hearing, Father would have visitation on the first, third, and fifth weekends of each month from "after school on Friday until school resumes Monday morning," and that the parties would attend mediation. The case was continued several more times, and by order entered October 5, Father's parenting time was enlarged from that set in the first order to begin at 6 p.m. on Thursday.

Mediation was unsuccessful, and a hearing was held before the magistrate on January 11, 2017. On January 18, the magistrate entered its Findings and Recommendations: sustaining Father's petition for visitation and continuing Father's visitation as it had been set in the temporary order plus setting a summer and holiday parenting time schedule; granting the parents joint custody of Jaxon; and naming Mother primary residential parent. Mother requested a *de novo* hearing before the juvenile court judge.

The *de novo* hearing was held before a special judge of the juvenile court on August 3 and November 9, at which the following witnesses testified: Jaxon's paternal great aunts Yulandra J. and Shandra F., Theresa C., a friend of Mother's,[1] Jaxon's maternal aunt Angela B., Father, Dr. John McCoy, a licensed psychologist who had been treating Jaxon since March 2017, and Mother. On December 4, the juvenile court entered an order making certain findings, vacating all prior orders of visitation,[2] granting Father therapeutic supervised visitation under the care of a licensed family clinical psychologist, and granting each parent the right to regular telephone conversations "once approved by their respective family clinical psychologist" and the rights at Tennessee Code Annotated section 36-6-101(a)(3).

Father filed a motion to alter or amend the judgment, seeking to have the court make additional findings specifically relating to possible bias on the part of Dr. McCoy. In her response to the motion, Mother sought her attorney's fees.[3] After a hearing, the

---

[1] Theresa C. testified that Mother is "like my daughter," that Jaxon "is my grandson to me," and that she has "been taking care of him almost from day one."

[2] The order states that it "is a final order and is intended to resolve all issues before the Court; any matters not specifically otherwise addressed are hereby denied." Father had filed an "Emergency Petition to Modify Visitation And/Or Custody," on October 3, 2017, in which he sought to be designated as primary residential parent or to have his summer or holiday parenting time increased. Father does not raise the denial of his emergency petition as an issue in this appeal.

[3] Mother's response to the motion summarily states (in pertinent part): "Attorney for Mother would urge this Court to dismiss Father's Motion at Father's costs; and that Mother be awarded attorney fees and costs for defending the child's interest in this cause."

court entered an order denying Father's motion and ordering him to pay $612.50 in attorney's fees to Mother's counsel.

Father appeals, raising the following issues for our review:

1.  Did the trial court properly consider all the evidence presented when determining that there was a material change of circumstances or other basis which would require a radical modification of the father's parenting time?
2.  Was the trial court presented with appropriate evidence as to the credentials of the clinical psychologist sufficient to treat him as an expert and thereby rely on his opinion as to the needs of this child?
3.  Was sufficient evidence presented to the court to justify an award by the court of attorneys fees to the mother?

## II. STANDARD OF REVIEW

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Tenn. R. App. P. 13(d). Questions of law are reviewed *de novo* with no presumption of correctness. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); Tenn. R. App. P. 13(d)). To preponderate against a trial court's finding of fact, the evidence has to support another finding of fact with greater convincing effect. *Watson*, 196 S.W.3d at 701 (citing *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). We review the court's legal conclusions *de novo* with no presumption of correctness. *Watson*, 196 S.W.3d at 701 (citing *Campbell,* 919 S.W.2d at 35).

## III. ANALYSIS

### A. The Court's Ruling on Visitation

Our review of custody and visitation determinations was explained in *In re S.C.H:*

Ordinarily, "the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge." *Suttles,* 748 S.W.2d at 429 (quoting *Edwards v. Edwards,* 501 S.W.2d 283 (Tenn. Ct. App. 1973)); *see also Eldridge [v. Eldridge],* 42 S.W.3d [82] at 85 [(Tenn. 2001)]. However, the exercise of that discretion must be based on proof and applicable legal principles. *Hogue [v. Hogue],* 147 S.W.3d 245[, 251 (Tenn. Ct. App. 2004)]; *D. v. K.,* 917 S.W.2d [682] at 685 [(Tenn. Ct. App. 1995)]. A trial court acts outside its discretion if it applies an incorrect legal

standard or reaches a decision against logic or reasoning the causes an injustice to a party. *Eldridge,* 42 S.W.3d at 85. Applicable legal standards require that restriction, curtailment, or elimination of visitation rights must be based on specific findings, resulting from clear and definite evidence, that one of the situations justifying such action exists.

No. M2003-01382-COA-R3-CV, 2004 WL 2941151, at *5 (Tenn. Ct. App. Dec. 20, 2004).

The order of legitimation entered in July of 2008 did not adjudicate custody, designate a primary residential parent, or set parenting time. The order entered by the magistrate on January 18, 2017 held that Mother and Father would have joint custody of Jaxon, designated Mother as primary residential parent, and set a parenting schedule. Mother appealed the decision to the Juvenile Court where, in the order entered December 4, the court vacated all prior orders of visitation and established the parenting schedule at issue in this appeal. Under these circumstances, in which the court was fashioning a visitation schedule for the first time, Tennessee Code Annotated section 36-6-301 is the applicable standard for the court to apply; that statute reads:

After making an award of custody, the court shall, upon request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health. In granting any such rights of visitation, the court shall designate in which parent's home each minor child shall reside on given days of the year, including provisions for holidays, birthdays of family members, vacations and other special occasions. If the court finds that the noncustodial parent has physically or emotionally abused the child, the court may require that visitation be supervised or prohibited until such abuse has ceased or until there is no reasonable likelihood that such abuse will recur.

We are also guided by precedent establishing that "the public policy of this state, as expressed by Tennessee Code Annotated § 36-6-301 and reiterated by considerable case law, is that the non-custodial parent be awarded visitation reasonably sufficient to maintain the parent-child relationship." *Melvin v. Melvin*, 415 S.W.3d 847, 851 (Tenn. Ct. App. 2011) (citing *Suttles v. Suttles,* 748 S.W.2d 427, 429 (Tenn.1988); *In re Z.A.W.,* No. W2005-01956-COA-R3-JV, 2006 WL 1627180, at *4 (Tenn. Ct. App. June 12, 2006)). "Notwithstanding the discretion afforded the trial court in matters of child custody, the least restrictive visitation limits generally are favored in order to encourage the parent-child relationship." *Id.* (citing *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001); *In re Z.A.W.,* 2006 WL 1627180, at *5).

4

In establishing the visitation schedule in this case, the trial court made the following findings:

1. This case began June 2, 2008, with the filing of a petition to establish parentage and a subsequent order of July 3, 2008, establishing Gerald L[.] W[.] as the legal father of Jaxon C[.] W[.], born May 9, 2008, and setting a child support obligation.

2. On January 21, 2016, Mr. W[.] filed a petition for visitation which was granted January 11, 2017.

3. Said child's mother, Jackie W[.], filed, January 11, 2017, a request for a hearing pursuant to Tennessee Code Annotated, Section 37-1-107(d).

4. Said child has lived since birth with his mother who has performed the majority of the parenting responsibilities relating to his daily needs.

5. Up to the date visitation was ordered, March, 2016, visitation between the father and son was rare. Since March, 2016, the father has been exercising visitation roughly 112 days per year. The pickup and return of said child for visitation has minimized the parent's contact with each other to avoid conflict. Without assigning fault, it would be fair to say that there is a substantial degree of animosity between each parent. The father, at this time, would like to exercise more visitation; and the mother would like to restrict visitation.

6. Both parents appear to have a genuine concern for the care of their child; although they have very different parenting styles.

7. Emotionally, said child appears to have a genuine fear of his father and emotionally is being scarred by the enforcement of visitation.

8. Morally and physically each parent appears to have the ability to parent said child. However, their style of parenting is so divergent that their child is unable to adapt and appears to be suffering emotionally.

9. Dr. John McCoy, clinical psychologist, testified that said child is very afraid of his father and does not wish to be around him. That one occasion said child expressed suicidal thoughts related to visitation. It appears the father may have unrealistic expectations of his son and that his authoritarian approach to parenting has not been well received by his son. Additionally, said child feels picked upon in the father's home where he is now married with a newborn baby and two older step-children.

10. It appears said child suffers from ADHD which is currently being treated with Vyvanse. Numerous other complaints were testified to as to discipline styles and name calling all leading to a conclusion that this child is being pulled in two (or more) directions in a manner which is mentally, and perhaps physically, harmful.

The court then ordered:

> 1. That the petition for visitation should be sustained.
> 2. That all prior orders of visitation are vacated.
> 3. That the father, Gerald L[.] W[.], may have therapeutic supervised visitation under the care of a licensed family clinical psychologist or psychiatrist in coordination with, and cooperation with, said child's psychologist, Dr. John McCoy.
> 4. That each parent shall have the right to regular telephone conversations with their child between 7:00 P.M. and 7:15 P.M. each night for reasonable durations once approved by their respective family clinical psychologist or psychiatrist. . . .

While Father does not take issue with any of the court's specific factual findings as being unsupported by the evidence, he complains that the court ignored Mother's testimony about Jaxon's behavior. Specifically, he argues that Jaxon's behavioral issues predated Father's increased contact with him; in support of this argument, he cites Mother's testimony that Jaxon, a fourth grader at the time of trial, gets bored in school, runs to be the first person in line, calls out an answer without being called on, and engages in other actions which she characterized as "little nitpicky things." Father also contends the trial court overlooked evidence of his positive parenting style, which he argues was established by the testimony of Mother's sister, Angela B., regarding her observations of Father's interactions with Jaxon.[4]

In addition to that referenced above, we have reviewed all the testimony cited by Father. That testimony does not preponderate against the trial court's findings or mandate another holding; indeed, much of the testimony he cites supports the court's findings, specifically numbers six and eight. The testimony of Mother, Theresa C., and Dr. McCoy supports the other findings relative to Jaxon being "emotionally scarred by the enforcement of visitation" and "being pulled in two (or more) directions in a manner

---

[4] In pertinent part, the testimony cited is:

> Q. Okay. Have you had occasion to observe [Father] in his interaction with his son, Jaxon?
> A. Yes.
> Q. Okay. And did anything you observe cause you any concern?
> A. No.
> Q. How would you describe his parenting style?
> A. His parenting style is family like. He is very active with all of his children. As far as one main example that I observed is that he takes them to . . . a church every third Saturday and they pass out things to the homeless, food and clothing. So, I thought that was a great attribute and as far as playing sports with them and coaching teams of that nature.

6

which is mentally, and perhaps physically, harmful." We conclude that the court's factual findings are supported by a preponderance of the evidence and do not lead us to conclude, as urged by Father, that the court ignored substantial testimony.

While Father does not specifically assert that the court erred in setting his parenting time or in requiring that his visitation be supervised, we address the extent to which the order furthers the mandate at section 36-6-301 that parenting time be granted "as will enable the child and the noncustodial parent to maintain a parent-child relationship unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health."

The finding in the order that "[Jaxon] appears to have a genuine fear of his father and emotionally is being scarred by the enforcement of visitation" provides a basis for the limitation of Father's parenting time to therapeutic supervised visitation. *See* Tenn. Code Ann. § 36-6-301. The order, however, does not refer to section 36-6-301 or otherwise state the legal basis of its ruling; neither does it discuss the factors at Tennessee Code Annotated section 36-6-106(a)(1)-(15), which are to be applied when setting a parenting schedule that permits both parents to have maximum participation in the life of Jaxon to the extent that it is in Jaxon's best interest for both of them to do so.

In the absence of an order that explains the legal basis for requiring that Father's visitation be supervised in the manner ordered and applies the factors at section 36-6-106(a)(1)-(15) to the factual findings as affirmed herein, we are unable to afford the trial court's decision the deference that our review entails, and a remand for entry of an order that states the legal basis for decision is appropriate. In this regard, we are also concerned that paragraph 3 of the order, relating to the supervised visitation, is not sufficiently specific for us to review, for the parties to implement or enforce, or for Father's child support to be established in accordance with the child support guidelines. In addition, in light of the court's finding that there is a "substantial degree of animosity" between Mother and Father, we are concerned that paragraph 4, relative to telephone conversation, may be unworkable as written.

## B. The Testimony of John McCoy, Ph.d

Father contends that the court erred in permitting John McCoy, a licensed clinical psychologist who had been treating Jaxon since 2017, to offer "his opinion as to the mental health status of [Jaxon], as well as the causes of his concerning behaviors"; he also argues that Dr. McCoy was not qualified as an expert. Dr. McCoy, who testified as to his treatment of Jaxon, was not offered as or declared by the court to be an expert witness. At no point did Father object to his testimony or seek to limit it in any way.

Rule 103(a) of the Tennessee Rules of Evidence provides:

(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context[.] …

In *Grandstaff v. Hawks*, this Court said, "Failure to object [to] evidence in a timely and specific fashion precludes taking issue on appeal with the admission of the evidence." 36 S.W.3d 482, 488 (Tenn. Ct. App. 2000) (citing *Ehrlich v. Weber,* 88 S.W. 188, 189 (Tenn. 1905); *Pyle v. Morrison,* 716 S.W.2d 930, 936 (Tenn. Ct. App. 1986); Tenn. R. Evid. 103(a)(1)). "A party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error." Tenn. R. App. P. 36(a), cmt. a.

In light of Father's failure to make an appropriate and timely objection to the testimony of which he complains, the issue is waived.

## C. Award of Attorney's Fees to Mother

Father also appeals the award of $612.50 to Mother for attorney's fees. He argues that the court erred because there is "nothing in the record indicating that the Mother or her attorney submitted any written evidence as to the attorney fees or other expenses."

Tennessee Code Annotated Section 36-5-103(c) provides a right to recover attorney fees in custody and child support disputes. *In re Carter K.*, No. M2017-01507-COA-R3-JV, 2018 WL 896060, at *7 (Tenn. Ct. App. Feb. 14, 2018). The order at issue states that the decision was based on "statements of counsel and review of the record." The record on appeal does not include a transcript of the hearing or a statement of the evidence adduced at that hearing; it only contains the request for attorney's fees, not accompanied by an affidavit or other proof, in Mother's response to Father's motion to alter or amend.

In the absence of a transcript or statement of the evidence, we must "assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *Sherrod v. Wix,* 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992). It is Father's burden, as appellant, to provide this Court with an adequate record, including a transcript of the evidence or a statement of the evidence of the hearing at which the decision now complained of was made. *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992). In the absence of a transcript or statement of the evidence,

we have no means to review the court's decision; accordingly, we affirm the award of fees.

## IV. CONCLUSION

For the foregoing reasons, we vacate the order setting Father's visitation and remand the case for the trial court to enter an order in compliance with Tennessee Code Annotated section 36-6-301, that makes appropriate findings as to the factors at section 36-6-106(a)(1)-(15), and that more clearly establishes a parenting plan within the meaning of section 36-6-402(3);[5] in all other respects, the judgment is affirmed.

_____
RICHARD H. DINKINS, JUDGE

---

[5] Tennessee Code Annotated section 36-6-402 (3) states:

"Permanent parenting plan" means a written plan for the parenting and best interests of the child, including the allocation of parenting responsibilities and the establishment of a residential schedule, as well as an award of child support consistent with chapter 5 of this title.