FILED

09/04/2019

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2019 Session

**JESSICA HARTMANN v. BRIAN HARTMANN**

**Appeal from the Circuit Court for Montgomery County**
No. 11756C          Ted A. Crozier, Judge

———————————————————

**No. M2018-00891-COA-R3-CV**

———————————————————

This is an appeal in a proceeding to modify an agreed parenting plan, which was incorporated into a decree when Mother and Father finalized their divorce in Arizona in 2016. Prior to the entry of the decree, the Mother and their three minor children moved to Montgomery County, Tennessee, with Father's consent when he obtained temporary employment in Kuwait. The agreed parenting plan provided that by July 15, 2017, Mother, Father, and the children would relocate to a mutually agreed upon location or, in the event a location could not be agreed upon, to either Raleigh, North Carolina, Norfolk, Virginia, or Augusta, Georgia. Upon his return from Kuwait in June 2017, Father moved to Augusta, Georgia. Mother petitioned the Circuit Court of Montgomery County to modify custody in October 2017; Father counter-petitioned for contempt and enforcement of the Arizona decree. After a hearing, the court enrolled the Arizona decree, found that there was a material change of circumstance requiring modification of the decree, adopted a parenting plan submitted by Mother, and modified Father's child support. Father appeals; upon our review we have determined that the evidence does not support the court's a finding of a material change of circumstance. Accordingly, we reverse the judgment and remand the case for entry of an order that the children be relocated in accordance with the final decree.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;
Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Donald Capparella, Nashville, Tennessee, for the appellant, Brian Hartmann.

Steven C. Girsky, Clarksville, Tennessee, for the appellee, Jessica Hartmann.

# OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

In May of 2010, Brian Hartmann ("Father") and Jessica Hartmann ("Mother") were married in Arizona, where they resided. At the time of the marriage, Mother had one child from a previous relationship, and Father and Mother had one child together; after they were married, they had another child together, and Father adopted Mother's first child.

In February of 2015, Father accepted a job in Kuwait for a two to three year stint; Mother and Father agreed that Mother and the children would move to Clarksville, Tennessee, while Father was overseas, which she did in July of 2015. At the time of the move to Clarksville, the children were ten years, seven years, and eleventh months old. Shortly after moving, Mother informed Father that she wanted a divorce, and Father initiated divorce proceedings in Maricopa County, Arizona, Superior Court in January 2016.

Mother and Father were divorced in Maricopa County by decree entered October 13, 2016 ("Final Decree"). The decree incorporated an agreed "Legal Decision-Making and Parenting Time Agreement" ("Parenting Time Agreement"), which included the following provision, which is referred to by the parties as the "co-location provision":

> The minor children shall be relocated to a location that is mutually agreed upon by the parties no later than July 15, 2017. The parties agree that if they cannot reach an agreement as to the location, the children shall be relocated to either Raleigh, North Carolina, Richmond/Norfolk, Virginia, or Augusta, Georgia. Until July 15, 2017, or earlier if the minor children are relocated earlier, Father shall have liberal parenting time with the minor children in addition to having parenting time for the entire 2016 Fall Break, one-half of the 2016 Winter Break, and the entire 2017 Spring Break, and holiday parenting times set forth below. Commencing July 15, 2017, or earlier, if the minor children are relocated earlier, the parties shall commence regular schedule as set forth below.

Father returned to the United States in June of 2017 and established residence in Augusta, Georgia, where he signed a one-year residential lease to begin on July 1, 2017. The parties had agreed that Mother and the children would relocate to Augusta over the children's fall break, and on October 9, the children went to visit Father in Augusta; at the conclusion of their break, Father did not return the children to Clarksville.

On October 16, Mother filed a Petition in Montgomery County Circuit Court, seeking to register the Arizona decree, for an *ex parte* order requiring Father to return the

children to Mother, and to modify custody. The *ex parte* order was not entered; rather counsel for both parties signed an order providing that Father would return the children to Mother by October 22. On October 27, Father answered the petition and filed a counter-petition for civil contempt and enforcement of the Final Decree.

The trial court heard the petitions on January 10, 2018, and entered an order and parenting plan on January 24, ruling:

1. The Order entered in the Superior Court of the State of Arizona in and for the County of Maricopa which can be found under case number FC2016-000288 is hereby enrolled and registered as an Order of this Court;

2. The Mother is hereby designated as the primary residential parent of the parties' three (3) minor children;

3. The minor children shall remain in Clarksville, Tennessee with the Mother;

4. The Mother's Proposed Parenting Plan is found to be reasonable, equitable and in the best interest of the minor children while maximizing the Father's parenting time with consideration of the geographical distance;

5. No arrearages exist as it relates to child support;

6. Child support shall be calculated based on the variables as set forth herein; and

7. The parties shall each pay their own court costs and attorney fees.

Father's motion to alter or amend the order was denied, and he appeals, contending that the evidence does not support the court's finding of a material change of circumstances, and that the co-location provision in the Final Decree should be enforced.

## II. ANALYSIS

Mother requested that the trial court modify the Final Decree by naming her the primary residential parent and adjusting the parties' parenting time. In disposing of the petitions, the trial court registered the Arizona decree, ruling that it could be "enforced and modified as appropriate."[1]

---

[1] Neither party argues that the trial court erred in registering the Final Decree, and we find no error in the registration of the Final Decree.

Requests for a change of primary residential parent or modification of the residential parenting schedule are governed by Tennessee Code Annotated section 36-6-101(a)(2)(B) and (C). This statute contemplates a two-step analysis, predicated upon a finding that there has been a material change of circumstance.[2] "The threshold issue is whether there has been a material change of circumstances since the plan took effect." *In re Gunner F.*, No. M2016-01650-COA-R3-JV, 2017 WL 2438572, at *2 (Tenn. Ct. App. June 6, 2017) (citing § 36-6-101(a)(2)(B); *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003)). If the trial court finds that there has been a material change in circumstances, only then must it determine whether it is in the child's best interest to modify the parenting plan as requested. *Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007).

"There are no bright line rules for determining when a change of circumstances should be deemed material enough to warrant changing an existing custody arrangement." *Oliver v. Oliver*, No. M2002-02880-COA-R3-CV, 2004 WL 892536, at *3 (Tenn. Ct. App. Apr. 26, 2004) (citations omitted). "There are a few important factors to consider: '(1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way.'" *Newberry v. Newberry*, No. E2015-01801-COA-R3-CV, 2016 WL 2346771, at *4 (Tenn. Ct. App. May 2, 2016) (quoting *Cranston* 106 S.W.3d at 644).[3] Not every change in a child's life or the life of his or her parents rises to the level of a material or significant change warranting a change in his or her primary residential parent. *In re Gunner F.*, 2017 WL 2438572 at *2.

A trial court's determinations as to "whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions." *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013) (citing *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007)). We review the factual findings *de novo* with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.

---

[2] Tennessee "has a different set of criteria for determining whether a material change of circumstance has occurred to justify a modification of a 'residential parenting schedule'" and modification of the designation of the primary residential parent. *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007). There is a lower threshold for determining whether there has been a material change of circumstances necessary to modify a residential parenting schedule pursuant to Tennessee Code Annotated 36-6-101(a)(2)(C), than necessary to modify custody (or designation of primary residential parent) under section 101(a)(2)(B). Because we conclude that there has not been a material change in circumstances under either standard, we need not delve into the differences between the two.

[3] Whether a change is reasonably anticipated is "no longer relevant in cases governed by [section] 36-6-101(a)(2)(C)." *Newberry*, 2016 WL 2346771, at *4 fn. 3 (citing *Armbrister*, 414 S.W.3d at 704).

4

1996)). To preponderate against a trial court's finding of fact, the evidence has to support another finding of fact with greater convincing effect. *Watson*, 196 S.W.3d at 701 (citing *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). We review the court's legal conclusions *de novo* with no presumption of correctness. *Watson*, 196 S.W.3d at 701 (citing *Campbell,* 919 S.W.2d at 35).

In ruling on the petitions, the trial court made the following findings:

13. The Court finds that a ma[ter]ial change in circumstances does exist in this cause though it is not as drastic a change as most cases heard in this court. The Court finds that those changes are as follows:

A. The Mother has resided in Clarksville, Tennessee for the last 2.5 years and 1.5 years since the entry of the Final Decree of Divorce.

B. For the last 2.5 years and following the entry of the Final Decree of Divorce, the three (3) minor children of this cause have been attending school in Clarksville, Tennessee and have established themselves at said schools.

C. The minor children are making good grades and thriving in the schools that they attend in Clarksville, Tennessee.

D. The minor children have friends and a strong support system in Clarksville, Tennessee.

E. The Mother has gainful employment that she did not have before the divorce was finalized between the parties.

F. The Mother has a new baby and has an established home in Clarksville, Tennessee.

G. The children are engrained in this community of Clarksville, Tennessee at this juncture.

With the exception of Finding E, Father does not contend that the evidence preponderates against these findings, but argues that the findings are inapplicable to the material change in circumstances analysis because the circumstances discussed in the court's findings were present before the Final Decree was entered. We have reviewed the

5

transcript of the hearing[4] on the parties' petitions and the evidence entered at that hearing, and with the exception of Finding E, we conclude that the evidence supports the court's findings. With regard to Finding E, Mother testified that she works as a leasing consultant at Campbell Crossing; she did not testify as to when she began working there. Father testified that she worked there "at the time of the divorce"; that testimony was undisputed. Accordingly, the evidence preponderates against the trial court's finding the Mother was not employed at the time of the entry of the Final Decree; the undisputed proof shows that Mother was at her current place of employment at the time the Final Decree was entered.

Father argues that the trial court's findings do not support the conclusion that there was a material change in circumstances. We agree.

In Findings A and B, the trial court described conditions that were in place before, during, and after the Final Decree was entered. Mother testified that she and the children moved to Clarksville in July of 2015 and have lived there continuously and exclusively since that time, including at the time Final Decree was entered in October of 2016.

In regards to Finding C, the two oldest children were enrolled in Clarksville schools for over a year before the entry of the Final Decree. Mother testified that they were making good grades and doing well in their schools. There was no testimony that these children only began doing well after the Final Decree was entered, and we conclude that they were doing well in school in the 15 months prior to the entry of the Final Decree.

With respect to Finding D, Mother introduced evidence of the support system for the children in Clarksville through her testimony and that of Randy Story, Mother's boyfriend, and his mother. Mr. Story testified that he met Mother in September of 2015, began living with her in October of 2015, and began a romantic relationship with her around August 2016, approximately three months before the entry of the Final Decree. Mr. Story's mother testified generally regarding her and her family's relationship with the children. Father did not dispute any of the testimony on this fact or introduce evidence to the contrary. The evidence shows that the children acquired that support system when Mr. Story and his family entered into their lives, which occurred prior to entry of the Final Decree.

With regard to Finding E, as discussed previously, the evidence preponderates against the court's finding; Mother's employment was not a new circumstance that arose after the entry of the Final Decree.

---

[4] At that hearing, Mother, Father, Randy Story (Mother's Boyfriend), and Loretta Story (Mr. Story's Mother) testified.

With regards to Finding F, it is undisputed that Mother's child with Mr. Story had not been born at the time of the entry of the Final Decree; Mother testified that the child was conceived the same month as the Final Decree. With respect to the home she had established in Clarksville, Mother testified that she moved to Clarksville over a year before entry of the Final Decree and into her current home a year before the entry of the Final Decree; that she started a new romantic relationship several months before the Final Decree; and that she started a new job sometime before the entry of the Final Decree.

With regards to Finding G, in addition to testimony regarding the children's enrollment in school and interaction with Mr. Story's family, Mother testified that they "have friends here like they've never had friends anywhere else" and that they attend church in Clarksville. There was no testimony that the children's connection to Clarksville was only established after entry of the final decree, and the testimony of Mother, Mr. Story and his mother shows that the children's involvement in the Clarksville community began before the entry of the Final Decree.

Considering the evidence in its entirety, it appears that the only circumstance that changed between the entry of the Final Decree and the filing of Mother's Petition was the birth of Mother's child with Mr. Story. That change does not support a conclusion that there was a material change in circumstance sufficient to support modification of the Final Decree. Accordingly, we reverse the judgment of the trial court and remand this action for the court to enter an order requiring that the children be relocated to Augusta, Georgia, in accordance with the Final Decree.

Our conclusion that there has not been a material change of circumstances pretermits consideration of Father's argument relative to the enforceability of the "co-location provision."

Mother's petition also requested that the trial court modify Father's child support obligation. When it entered the new parenting plan, the court also modified Father's child support obligation in accordance with Tennessee Child Support guidelines; Mother argues on appeal that the court erred in calculating support. The trial court's modification of child support was based on the grant of Mother's petition and resulting adjustment of parenting time. Our reversal of the judgment reinstates Father's obligation as set in the Final Decree. Nothing in this opinion should be construed as preventing the court from considering a new petition to modify support.

### III. ATTORNEY'S FEES

Mother requests her attorney's fees for this appeal, asserting in her brief that "[i]n examining the financial circumstances of this case, it is readily apparent that [Father] is better equipped to handle a payment of attorney fees as opposed to [Mother]." As this Court has stated:

[I]t is in the sole discretion of this court whether to award attorney's fees on appeal. As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered.

*Spigner v. Spigner*, No. E2013-02696-COA-R3-CV, 2014 WL 6882280, at *13 (Tenn. Ct. App. Dec. 8, 2014) (citations omitted). Considering the circumstances of this case, in our discretion, we decline to award fees to either party.

_____

RICHARD H. DINKINS, JUDGE